(103 So. 251)

No. 26989.

ROSENTHAL–BROWN FUR CO. v. JONES–FRERE FUR CO. et al.

In re JONES–FRERE FUR CO. et al.

(Feb. 2, 1925. Rehearing Denied March 2, 1925.)

*(Syllabus by Editorial Staff.)*

1. Appeal and error ⊕⟾343—Application to Supreme Court to compel reduction of suspensive appeal bond suspends running of delay allowed for perfection of suspensive appeal.

An application to Supreme Court for writs of certiorari, prohibition, and mandamus to compel district judge to reduce amount of suspensive appeal bonds, suspends running of delay allowed for perfection of suspensive appeal, and application filed before expiration of 10 days was filed in time.

2. Appeal and error ⊕⟾465(2)—Amount of suspensive appeal bond held within court's discretion and not to be measured by arbitrary rules.

In view of the value of the trapping rights involved and evidence as to the anticipated revenue during the current trapping season, and that the amount of the suspensive appeal bond was fixed by the trial judge, it is immaterial whether in so doing he acted under Code Prac. art. 577, or within the discretion vested in him by law.

3. Mandamus ⊕⟾38—Sequestration ⊕⟾12—Judicial sequestration within discretion of judge, and mandamus will not lie to control such discretion.

The allowance or disallowance of a judicial sequestration rests within sound discretion of judge a quo, and mandamus will not lie to control matters within such discretion.

4. Certiorari ⊕⟾58—Mandamus ⊕⟾172—Prohibition ⊕⟾28—On application for certiorari, mandamus, and prohibition, affidavits and statements attached to supplemental petition not considered.

On hearing of application to Supreme Court for writs of certiorari, prohibition, and mandamus to compel district judge to reduce amount of suspensive appeal bond, Supreme Court will not consider affidavits and statements attached to a supplemental petition.

Action by the Rosenthal-Brown Fur Company against the Jones-Frere Fur Company and another. Judgment for plaintiff. On application by defendants for writs of certiorari, prohibition, and mandamus to compel reduction of suspensive appeal bond. Preliminary writs issued recalled, and application denied.

Pujo & Bell, of Lake Charles, for relator Orange-Cameron Land Co.

Donelson Caffery, Paul A. Sompayrac, and Anna C. McKay, all of New Orleans, for relators Jones-Frere Fur Co.

Cline & Plauche and Cullen R. Liskow, all of Lake Charles, for respondent Rosenthal-Brown Fur Co.

ROGERS, J. Relators are the defendants in an action brought by the Rosenthal-Brown Fur Company. The suit involves the trapping rights on a tract of, approximately, 30,000 acres of land situated in the parish of Cameron.

The case, on the application of the defendants, was tried by a jury, who found for the plaintiff as prayed for in its petition, and, in accordance therewith, judgment was entered recognizing plaintiff's exclusive right to trap fur-bearing animals on said land, enjoining defendants from interfering therewith and from trapping on said property.

Defendants, after having unsuccessfully applied for a new trial, moved for and obtained suspensive and devolutive appeals to this court, upon furnishing a bond of $150,000 for a suspensive appeal and a bond of $1,000 for a devolutive appeal.

Subsequently, on a motion to reduce the suspensive appeal bond, it was fixed by the court below at $125,000, and an alternative plea for the judicial sequestration of the property was refused.

The defendants thereupon applied to this court for writs of certiorari, prohibition, and mandamus to compel the district judge to further reduce the suspensive appeal bond to an amount not exceeding $50,000; or, in the alternative, that said judge be directed to order a judicial sequestration of the property involved. The case is before us upon a rule nisi issued upon said application.

Respondents urge that the present proceeding should be dismissed for the reason that no suspensive appeal bond was actually tendered or filed by relators during the 10 days provided by law after the signing of the judgment. The cases of State ex rel. Duhe v. Judge, 41 La. Ann. 1140, 6 So. 797, and Borah v. Dussell, 153 La. 54, 95 So. 399, are cited as furnishing authority for such action.

[1] The cited cases are inapplicable for the reason that the applications for mandamus therein were filed long after the delays for suspensive appeals had expired. In this case, the application was made before the expiration of the 10 days. It was, therefore, filed in time, and the delay occasioned by the mandamus proceeding to compel the judge to grant the appeal cannot prejudice relators' rights. Ready v. City of New Orleans, 27 La. Ann. 169. The effect of relators' application for writs was to suspend the running of the delay allowed for the perfection of their suspensive appeal.

[2] Relators allege that they are willing to furnish any reasonable bond for a suspensive appeal, but that any bond in excess of $50,000 would be purely ornamental and oppressive, as the net value of said trapping rights which the said Jones-Frere Fur Company will exercise during the remainder of the season will not exceed $20,000.

The respondent judge for answer to the rule nisi denies that the bond fixed is unreasonable; that any amount over $50,000 would be merely ornamental and oppressive; and that the trapping rights of the Jones-Frere Fur Company would not exceed $20,000. He avers that the bond fixed is just and reasonable.

Respondent shows that on the trial of the cause for a preliminary injunction, Mr. Frere, of the Jones-Frere Fur Company, estimated the number of rats that would be caught on the tract as 600,000 per season, and plaintiff testified that the catch would amount to 200,000 rats per season. At this hearing it was shown that the rat skins were worth 50 cents each. The court ordered the preliminary injunction to issue upon plaintiff furnishing bond of $80,000. Plaintiff did not give said bond, but appealed devolutively from the order therefor, and the writ did not issue.

Respondent further shows that on the trial on the merits defendants established the value of the rats to be 65 cents each, and on

the motion to reduce the bond the testimony showed that the value of each rat had increased to 80 cents; that on the basis of 65 cents each the value of the rats, exclusive of the skins of other and more valuable animals trapped, would be approximately $400,000; that 26 of the 90 days of the trapping season had expired when the appeal was obtained, and that the value of the catch for the remainder of the season would be in excess of $250,000; that if one half of said amount be credited to plaintiff and the other half be credited to defendants, and taking into consideration that the bond should be one-half over the amount of the damage, the bond required of the defendants is just and reasonable.

It is shown by the record that plaintiff had 21 men, and that defendants had 60 men, employed in trapping the land.

The respondent judge shows that he had originally fixed the suspensive appeal bond at $150,000 because he thought the case would be "held up through part of the next trapping season," and that it was only upon the assurance that it could be reached and disposed of by the month of June that he reduced it to $125,000.

In the brief filed on behalf of the Orange-Cameron Land Company, a calculation is submitted showing that the net value of the pelts to be taken in the remaining 56 days of the trapping season could not exceed $35,-840. This calculation is based upon a statement furnished by plaintiff on the trial of the motion to reduce the bond, showing that 21 of its trappers within the period from November 15 to December 10, 1924, reported a catch of 4,713 pelts. And the argument is made that upon the basis of a catch in the same ratio by the 60 employees of defendant, the figures for both crews would reach 16,000 pelts for the 25 days, equal to a value of $640 per day, or for the 56 remaining days a value of $35,840. This argument is unsound because the statement enumerates only the skins in the warehouses of plaintiff and not the total catch during the period, and because the trapping was done, as testified to by Mr. Brown, "under a most deplorable condition," and the value of the skins of the more valuable animals is not shown, nor is the expense of the trapping definitely fixed, nor that the crew of defendants would continue to number 60 men, since they appear to be energetically engaged in increasing their trapping force. It is to be observed, in this connection, that defendants did not produce any statements showing the number and value of the animal skins gathered by its 60 trappers.

Beyond all this, under paragraph XIV of the answer of the Orange-Cameron Land Company, which allegation is adopted and made part of the answer of the Jones-Frere Fur Company, to the original suit, and which said pleadings are sworn to, it is alleged:

"That the gross value of the trapping rights for fur-bearing animals upon its premises hereinbefore described" (being land in question) "approximate a sum exceeding $400,000 per season, on the basis of the present market f. o. b. Orange, Tex.; that said premises if properly trapped will yield approximately 1,000,000 pelts of an average of 50 cents per pelt f. o. b. Orange, Tex."

The order of appeal was granted December 11th; the trapping season ends February 15, 1925, a period of 64 days. Under the showing made in their said answers, defendants' revenues for said period would amount to more than $350,000.

Furthermore, in their application to this court, relators have alleged, also under oath, that they have distributed over said tract of land 12,000 traps in which they are taking 3,000 animals daily.

They also aver that the fur of each of said animals has a value (net) to them of 40 cents. Without any increase in their crew of trappers and the number of traps distributed, this, in itself, would amount to a daily catch valued at $1,200 for the rat skins alone,

or the sum of $76,800 for the 64 days from the date the judgment was signed to the end of the season. Increase this amount by one-half, and the figure reached is $115,700; and this estimate does not include the value of the more expensive animals trapped.

The foregoing figures would be largely increased if the calculation should be made on a valuation of 65 cents a piece or 80 cents a piece for said rat skins. And, moreover, it is not certain that plaintiff, by exercising greater care and economy, would not obtain a larger net return than 40 cents for each rat skin.

Relators further complain that Code Prac. art. 577, under the authority of which the district judge fixed the bond at one-half over and above the estimated revenue from the land involved herein, is inapplicable because the present controversy is over a mere right of servitude. They aver that inasmuch as the judgment appealed from does not condemn them to pay any specific sum, the amount of the appeal bond must be fixed by the judge a quo.

It suffices to state, in so far as this argument is concerned, that the judge did fix the bond, and whether in so doing he was guided by article 577 of the Code of Practice, or by the fact that the case was one of that numerous class of cases in which the amount of the bond rests entirely in the sound discretion of the court, we see no good reason to rescind or interfere with his action.

[3] In the alternative, relators ask that if the appeal bond be not reduced a judicial sequestration of the property be ordered. The respondent shows that the request for a judicial sequestration was not made in the court below until four days after the judgment was signed and when an appeal had been taken but not perfected. That the court could not presume that the appeal would be perfected either suspensively or devolutively, and, if it were not, the matter would have been judicially determined and the judicial sequestration would have been uncalled for.

We are unable to grant relators' alternative prayer. The allowance or disallowance of a judicial sequestration rests within the sound discretion of the judge a quo, and mandamus will not lie to control matters within such discretion. Succession of Pavelka, 102 So. 579,[1] No. 26899 of the docket of this court, recently decided, and authorities therein cited.

[4] Since the submission of this cause, relators have filed a supplemental petition setting forth what are averred to be new and additional facts in support of their application for an order to compel the judge a quo to reduce the amount of the suspensive appeal bond as finally fixed by him, and attached to the said petition is an affidavit and statements purporting to show said facts.

We cannot consider this petition and attached documents. This court as a court of record and sitting as an appellate tribunal exercises jurisdiction only on matters which appear from the record to have been presented to and considered by the court of first instance. De Grilleau v. Boehm, 106 La. 472, 31 So. 74. To the same effect, see Bouguille v. Dede, 9 La. Ann. 292; Guillotte v. Lafayette, 5 La. Ann. 382; Avoyelles Parish v. Mansura, 116 La. 1043, 41 So. 251.

And a case directly in point is Wenar v. Schwartz, 116 La. 151, 40 So. 599, where it was held:

"Affidavits, in the nature of original evidence, attached to the return of litiguent to an application for a writ of mandamus to compel the granting of an appeal, cannot be considered in this court."

If affidavits annexed to the return to an application for mandamus to compel the granting of an appeal must be disregarded, surely affidavits annexed to such application

---

[1] Ante, p. 480.

itself are in the same category and cannot be considered by the court.

For the reasons assigned, the preliminary writs herein issued are recalled, and relators' application is now denied, at their costs.

---

(103 So. 254)